George, Appellant, *v.* Nemeth.

552

Argued April 26, 1967.   Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Norman Seidel,* with him *George C. Laub* and *Arnold J. Falk,* for appellant.

*James J. McConnell,* with him *Snyder, Wert, Wilcox, Frederich & Doll,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, September 26, 1967:

On February 19, 1963, Mary George was struck by a bakery truck owned and operated by one Fred Nemeth. Subsequently she instituted an action of trespass against Nemeth wherein she joined the William Freihofer Baking Company [Freihofer] as an additional defendant, alleging that Freihofer was liable to the plaintiff under the doctrine of respondeat superior. Freihofer filed an answer specifically denying the existence of any agency relationship between it and Nemeth, whereupon, with the consent of all concerned parties, the court below heard argument on this issue and decided it adversely to Miss George. The sole question before us is the correctness of that ruling. Since the facts are not disputed the parties agree that the question of agency is one to be decided by the court as a matter of law, *Feller v. New Amsterdam Cas. Co.,* 363 Pa. 483, 70 A. 2d 299 (1950).

The legal distinction between an employee and an independent contractor has been reiterated by this Court on numerous occasions. See, e.g., *Green v. Independent Oil Co.,* 414 Pa. 477, 201 A. 2d 207 (1964); *Johnson v. Angretti,* 364 Pa. 602, 73 A. 2d 666 (1950); *Feller v. New Amsterdam Cas. Co.,* 363 Pa. 483, 70 A. 2d 299 (1950); *Joseph v. United Workers Ass'n,* 343 Pa. 636, 23 A. 2d 470 (1942); *Stepp v. Renn,* 184 Pa. Superior Ct. 634, 135 A. 2d 794 (1957). Speaking generally, "the hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of

an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result." *Green v. Independent Oil Co.,* supra at 484, 201 A. 2d at 210 (1964).

The difficulty arises in the application of these general principles to the facts of a given case. Since each case must be decided on its own facts, the existence of all or some of the factors discussed in the above cited cases is not necessarily controlling. *Namie v. DiGirolamo,* 412 Pa. 589, 594, 195 A. 2d 517, 519 (1963). Although the Distribution Agreement signed by Nemeth and Freihofer specifically refers to their relationship as being one of an independent contractor, this is not determinative of the matter for it is the actual practice between the parties which is crucial. See *Feller v. New Amsterdam Cas. Co.,* 363 Pa. 483, 70 A. 2d 299 (1950); *Eggelton v. Leete,* 186 Pa. Superior Ct. 542, 142 A. 2d 777 (1958).

Miss George points to the following factors as being indicative of an employee-employer relationship: (1) Under the Distribution Agreement, Nemeth was required to purchase from Freihofer bread and other food products made by Freihofer and to maintain the efficient distribution of said products in the territory assigned to Nemeth. (2) Nemeth could not sell products which would be in competition with Freihofer's. (3) Freihofer had the right, which it exercised, to have the name of the bakery painted on Nemeth's truck, although there was also an inscription that the truck was "owned and operated by Fred J. Nemeth." (4) Nemeth was limited to a territory defined in the agreement and in the event his relationship with Freihofer was terminated he could not for the following year directly or indirectly further the business of a competitor within said territory. (5) Nemeth sold Freihofer's products at the suggested retail prices and filled out

Freihofer's slips when loading his truck each day. (6) If Nemeth was sick one of Freihofer's regular employees took over the route for that day and Freihofer retained all the profits from that day's sale. However, if Nemeth went on vacation it was his responsibility to hire his own substitute. (7) Nemeth was required to furnish Freihofer with a cash deposit of $100 as security for the "faithful performance of the agreement." (8) At the time of the accident Nemeth was wearing a Freihofer uniform and by driving the truck was actually advertising Freihofer's business. (This factor alone, however, we find to be legally insignificant for this case does not present any question of apparent authority.) Under the terms of the agreement the purchase of the uniform was optional. (9) Freihofer could terminate the agreement at will by giving one month's notice to Nemeth. (10) Nemeth could not transfer or assign the Distribution Agreement without Freihofer's consent.

On the other hand, Freihofer maintains the arrangement was one of an independent contractor because: (1) Nemeth acquired the route from a third party not from Freihofer. (2) The truck was owned at all times by Nemeth and he bore all cost of operation and maintenance. (3) Nemeth sold products of other companies provided they were items that Freihofer did not manufacture or process. (4) Nemeth physically loaded his own truck at the loading platform without the assistance of Freihofer's employees. (5) Nemeth made all the decisions about extending credit. (6) Nemeth purchased the products from Freihofer and paid for them on a weekly basis. (7) Any products which were not sold were nonreturnable with Nemeth again bearing the loss. (8) Nemeth was not bound by the retail prices supplied by Freihofer although he actually did follow them. (9) Freihofer exercised no control over

Nemeth as to the manner in which he operated and serviced his customers.

We are in accord with the decision of the court below that, on balance, these stipulated facts demonstrate that the relationship between Nemeth and Freihofer was that of an independent contractor. These facts clearly show that the parties intended to establish a relationship more resembling wholesaler-retailer than master-servant. In practice, as well as on paper, the parties operated under this former concept, for Nemeth was responsible to Freihofer only for the result and was thus at liberty to perform his work as he saw fit. In view of this, it is not surprising that Freihofer reserved the right to terminate its agreement with Nemeth in the event it was not satisfied with the latter's results.

Nevertheless, the appellant argues strenuously that Freihofer's superior economic power is such that by merely threatening to terminate it could effectively and completely control Nemeth's working habits. Cf. *Gadd v. Barone*, 167 Pa. Superior Ct. 477, 479, 75 A. 2d 620, 622 (1950). While we recognize that the power to terminate the relationship at any time "tends strongly to show that the person employed is not an independent contractor but a servant," *Feller v. New Amsterdam Cas. Co.*, 363 Pa. 483, 487, 70 A. 2d 299, 301 (1950), nevertheless this aspect alone is not sufficient, nor in the circumstances of this case do we find it persuasive, see *Namie v. DiGirolamo*, 412 Pa. 589, 594, 195 A. 2d 517, 519 (1963). As we have previously pointed out, "in Feller the employee worked regular hours, received daily instructions as to where to work, reported each day's activities, and was otherwise subject to strict control by his employer." *Namie v. DiGirolamo*, supra.

*Hilyar v. Union Ice Co.*, 45 Cal. 2d 30, 286 P. 2d 21 (1955) involved a situation where the driver of an ice truck injured a minor pedestrian. As in the instant

case, the driver owned the truck and bore the cost of maintenance and operation, he had a written contract with the ice company giving him a specified territory, the ice company sold ice to the driver who in turn sold it at retail, the ice company's emblem appeared on the truck, and the agreement was nonassignable. The California Supreme Court held the driver to be an independent contractor; *Hilyar* is on all fours with the instant case.

Perhaps the Pennsylvania case most directly in point is *Tyler v. MacFadden Newspapers Corp.*, 107 Pa. Superior Ct. 166, 163 Atl. 79 (1932). In that case the defendant company owned a truck which it rented to one Morris Rosen under an agreement whereby Rosen was to purchase the truck on weekly installments and to operate it at his own expense for the purpose of delivering the defendant's newspapers on designated routes. In return the defendant agreed to pay Rosen a stipulated weekly sum. While driving the truck, an employee of Rosen caused injury to a third party. One of the reasons given for dismissing the suit against the defendant company was that Rosen was an independent contractor.

Finally we note that *Shields v. William Freihofer Baking Co.*, 147 Pa. Superior Ct. 455, 24 A. 2d 54 (1942), relied upon by appellant, is inapposite because the distribution agreement and practices then in existence differed materially from the present agreement and practice.

Judgment affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Justice MUSMANNO dissents.

Mr. Justice COHEN took no part in the consideration or decision of this case.