**Rose Marie DREXEL, Administratrix of the Estate of Edward H. Drexel, Sr., Deceased, and Rose Marie Drexel, in her own right**

v.

**UNION PRESCRIPTION CENTERS, INC.**

**Civ. A. No. 76–84.**

United States District Court,
E. D. Pennsylvania.

March 23, 1977.

Jack E. Feinberg, Philadelphia, Pa., for plaintiff.

A. Grant Sprecher, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

This is an action for damages under the Pennsylvania Wrongful Death Act, 12 P.S. §§ 1601 *et seq.,* and the Pennsylvania Survival Act, 20 Pa.C.S.A. §§ 3371 *et seq.* Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332(a)(1).[1] The case is before me on defendant's motion for summary judgment, Fed.R.Civ.P. 56. Affidavits and a deposition have been filed which form a record upon which this motion may be decided. *See* Fed.R.Civ.P. 56(c).

---

1. In the complaint, plaintiff alleges that she is a citizen of Pennsylvania and that defendant is a Delaware corporation with its principal place of business in Wisconsin. The amount in controversy exceeds $10,000.

The complaint alleges that plaintiff's husband, the decedent, had been given a prescription for the drug "Aldactone" which was properly filled on March 3, 1975 by a Reading, Pennsylvania, retail drug store known as Union Prescription Center. Decedent returned to that same drug store on April 14, 1975 to have the prescription refilled, but this time the prescription was filled with the drug "Coumadin" instead of "Aldactone." As a result of taking "Coumadin," "plaintiff's decedent sustained massive traumatic injuries from which he died on May 12, 1975."[2]

On January 12, 1976, plaintiff, acting on behalf of herself and in her capacity as administratrix of decedent's estate, filed this action against Union Prescription Centers, Inc., charging it with "negligence and carelessness and malpractice" in improperly refilling the prescription.

Defendant, Union Prescription Centers, Inc., filed this motion for summary judgment contending that it "was not, at any time material to plaintiff's cause of action, the owner, operator, possessor, or in control of the drug store" in which the prescription was filled. Defendant asserts that on October 15, 1974, it entered into a franchise agreement under which Joseph J. Todisco, Jr. purchased from defendant the right to acquire the retail drug store in Reading and to operate it under the Union Prescription Center name. Defendant alleges that Todisco is an independent contractor for whose acts it is not liable.

In support of its motion for summary judgment, defendant has submitted the affidavits of Joseph J. Todisco, Jr., the franchisee, and James B. Young, Esquire, defendant's corporate counsel. These affidavits assert that Todisco was not and never had been a servant, employee or agent of defendant; that at no time relevant to plaintiff's cause of action had defendant supplied drugs or medication to Todisco;

---

2. Complaint ¶ 7.

and that defendant neither controlled nor had the right to control the physical conduct of the local pharmacist, Todisco.

Plaintiff has filed no countervailing affidavits to contest the franchise arrangement between defendant and Todisco, but instead has reiterated and relied upon the allegations of the complaint. It is plaintiff's position that defendant is vicariously liable for Todisco's alleged negligence, either because defendant retained sufficient control over the operation of the Reading store to make it liable under principles of *respondeat superior,* or because defendant "held itself out" to the public as the owner or operator of the Reading store.

Plaintiff has cited several provisions of the franchise agreement between defendant and Todisco as evidence that there existed between them a master-servant or principal-agent relationship or that plaintiff held itself out as the store's owner: the franchisor provides "management and marketing advice throughout the franchisee's tenure" (Preamble, page 1); the retail store may only operate under the "Union Prescription Center" name and logo (Article I.A., B., page 2); defendant approves the location of each retail store and reserves the right to inspect the premises (Article IV.A., page 3); the retail store must adhere to defendant's "uniformly high standards of service, appearance, quality of equipment and proved methods of operation" (Article VI.C., page 4); the retail store must conform to inventory requirements and remain open for business a minimum of forty-six hours per week (Articles VIII, IX, page 5); the retail store must utilize advertising and promotional materials specified by defendant "to maintain uniformity of appearance, national recognition, point of purchase impact and full penetration of promotional opportunities" (Article XII.C., page 7); defendant has the right to terminate the agreement if the retail store does not comply with the agreement's provisions, in which case defendant can take possession of the store (Articles XV., XVI.B., page 9). In addition, plaintiff has submitted and relies upon the deposition (Document No. 16) of Joseph J. Todisco, Jr., the franchisee.

## DISCUSSION

██ . The moving party in a motion for summary judgment undertakes a twofold burden under Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) provides that:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party thus has the burden to establish that there exists no genuine issue as to any material fact and that judgment in his favor is proper as a matter of law. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Felix v. Young,* 536 F.2d 1126, 1130 (6th Cir. 1976). The evidence must be considered in a light most favorable to the opposing party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Goodman v. Mead Johnson & Co., supra,* at 573. When the party opposing a motion for summary judgment has alleged facts in his pleadings which are supported by affidavits or other evidence, those facts must be taken as true in ruling on the motion. *First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 629 (2d Cir. 1972). Nevertheless, the opposing party cannot rest on mere allegations in the complaint, but instead he must come forth, through some evidentiary means, with specific facts showing that there is a genuine issue for trial. Fed.R. Civ.P. 56(e); *Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976); *Williams v. McAllister Bros., Inc.,* 534 F.2d 19, 23–24 (2d Cir. 1976); *Season-All Industries, Inc. v.*

*Merchant Shippers,* 417 F.Supp. 998, 1002 (W.D.Pa.1976).

### 1. *The Respondeat Superior Theory*

 Negligence, vicarious or otherwise, cannot be predicated upon a set of circumstances which do not create a legal duty. *Zayc v. John Hancock Mut. Life Ins. Co.,* 338 Pa. 426, 430–31, 13 A.2d 34 (1940); *Boyce v. United States Steel Corp.,* 446 Pa. 226, 230, 285 A.2d 459 (1971). Under Pennsylvania law in order to hold a master/principal vicariously liable for the negligence of a servant/agent, it must be shown that the master has the right to control not only the results of the servant's work but also the very manner in which the work is to be done. *Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970); *Collins v. Hand,* 431 Pa. 378, 394, 246 A.2d 398 (1968).

> "The hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result . . . . ."

*Green v. Independent Oil Co.,* 414 Pa. 477, 484, 201 A.2d 207, 210 (1964).

 Plaintiff recognizes that the power to control Todisco's physical conduct of the work is an essential element of her claim of vicarious liability against defendant. Plaintiff seeks support for that right to control in the several provisions of the Franchise Agreement which she has cited. It is clear, however, that the cited portions of the agreement only give defendant-franchisor the tools with which to protect the proprietary interest in its name and goodwill. Nowhere in the agreement is there any provision giving defendant the right to control the manner in which Todisco was to perform the daily chores of the business. The restrictions in the agreement concerning the type of advertising, logos, and inventory do not give defendant the right to dictate the manner in which Todisco was to fill prescriptions; nor does the right retained by defendant-franchisor to inspect the premises and to terminate the agreement constitute such control over Todisco's manner of performance as to create vicarious liability. *See George v. Nemeth,* 426 Pa. 551, 233 A.2d 231 (1967); *Moushey v. United States Steel Corp.,* 374 F.2d 561, 568 (3d Cir. 1967). Defendant was not concerned with the "means" by which Todisco conducted his pharmacy business; it was concerned only with the "results" of his work. *See Massachusetts Mutual Life Ins. Co. v. Central Penn National Bank,* 372 F.Supp. 1027, 1041 (E.D.Pa.1974), *aff'd mem.,* 510 F.2d 970 (3d Cir. 1975).

Defendant's affidavits, while essentially conclusory, do state sufficient facts to establish that defendant was not Todisco's principal or master and that defendant supplied no drugs or medications to Todisco at any time relevant to plaintiff's claim. Todisco's deposition, upon which plaintiff relies, demonstrates instead the absence of any control by defendant over Todisco's physical conduct of the business. The record provides a sufficient basis for determining that no principal-agent or master-servant relationship existed between the defendant and Todisco.

### 2. *The "Holding Out" Theory*

Plaintiff has advanced as an alternative theory upon which to impose liability on defendant, that defendant held itself out as the operator of the Reading store, citing as authority *Brown v. Moore,* 247 F.2d 711 (3d Cir.), *cert. denied,* 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957).

In *Brown,* plaintiff's decedent died as a result of improper medical treatment by a doctor in a private sanitarium. The primary holding in that case was that the sanitarium was the employer of the doctor, rejecting the argument that the defendants, partner owners of the sanitarium, had no control over the doctor in the performance of his professional duties. As an *alternative* holding, the Court in *Brown* stated that, even if the doctor were an indepen-

dent contractor vis-a-vis the sanitarium, the latter would nevertheless be liable for the doctor's malpractice on the ground that there had been a *"holding out, a representation"* (*Brown, supra,* at 719 (emphasis in original)) to the patient that medical treatment was to be administered by a doctor employed by the sanitarium. The Court, through then Chief Judge Biggs, predicted that the Courts of the Commonwealth of Pennsylvania would apply the doctrine of *respondeat superior* in such case and hold the sanitarium liable for the malpractice of the doctor.

Plaintiff in the instant case contends that, in similar fashion, defendant led the public to believe that it was dealing with the corporate defendant rather than with a local pharmacist. Plaintiff points out, in support of that contention, that the fictitious name registration in Berks County was in the name of Union Prescription Center; that bags used to package goods at the store in question, as well as prescription labels and cash register receipts, bear only the name Union Prescription Center and nowhere identify Todisco as the owner and operator; that various forms of advertising (newspapers, nail files, ball point pens) are in the name of Union Prescription Center; and that the telephone book listing was in the name Union Prescription Center.

In my view, *Brown* is clearly distinguishable. There, the crucial fact emphasized by the court in advancing the holding out theory was that the operators of the sanitarium had represented to the patient that the doctor was their employee. No similar representations are present in the instant case. Indeed, the franchise agreement (Article I.B.) requires the franchisee to identify himself as the owner of the store on all invoices, statements, letterheads, prescription blanks and other printed matter, and that all applications for local licenses or other entries in public records be made in the franchisee's name.

The deposition of Todisco reveals that *he* had registered in the fictitious names index for Berks County to operate under the fictitious name, Union Prescription Center

(Dep., p. 10; *see* Pennsylvania Fictitious Names Act, 54 P.S. § 28.1(a)); that Todisco had registered with the State Board of Pharmacy under the name Union Prescription Center and his own name, Joseph J. Todisco, Jr. (Dep., pp. 9–10; *see* Pennsylvania Pharmacy Act, 63 P.S. § 390–4); and that in the store premises there was exhibited a name plate bearing the name Joseph J. Todisco, Registered Pharmacist (Dep., p. 11). In light of the foregoing provision of the franchise agreement, and of the fictitious names registration, as well as the registration with the State Board of Pharmacy, the absence of Todisco's name on the prescription labels, bags and advertising is too slender a reed upon which to base a material issue for trial on the purported issue that the defendant held Todisco out as its employee. Plaintiff has cited no case in which the *Brown* holding has been extended beyond its own unique facts. The "holding out" theory has not been generally applied. *See Slack v. Treadway Inn,* 388 F.Supp. 15 (M.D.Pa.1974); *St. Paul Fire and Marine Ins. Co. v. Aetna Casualty & Surety Co.,* 394 F.Supp. 1274 (M.D.Pa.1974), *aff'd mem.,* 532 F.2d 747 (3d Cir. 1976).

Defendant is entitled to entry of summary judgment in its favor.