HUNTER MINING LABORATORIES, INC., Appellant, *v.* MANAGEMENT ASSISTANCE, INC., and APPLICATION SOFTWARE CORP., Respondents.

No. 18197

October 26, 1988 763 P.2d 350

*Michael J. Morrison,* Reno, for Appellant.

---

[5]The Honorable E. M. Gunderson, Chief Justice, did not participate in the decision of this appeal.

*Beasley, Hamilton & Holden,* Reno; and *Hansen, Boyd, Culhane & Mounier,* Sacramento, California, for Respondents.

## OPINION

*Per Curiam:*

In January and February of 1981, appellant Hunter Mining Laboratories, Inc. ("Hunter") and Hubco Data Products Corporation ("Hubco") signed contracts in which Hubco agreed to sell and Hunter to buy Basic Four computer equipment. Hubco also agreed to install the equipment and customize some of the stock Basic Four software to accommodate the specific needs of Hunter's business.

Hubco delivered most of the equipment, but closed its business in Nevada without completing the installation or the specialized software programming.

Hunter hired The Data Doctors Corporation ("Data Doctors") to complete the software programming which Hubco had begun. Unfortunately, Data Doctors, like Hubco, did not fulfill its part of the agreement.

Respondents Management Assistance, Inc. ("MAI") and M.A.I. Application Software Corporation ("MAI Software"), an MAI subsidiary, manufactured the computer products which Hubco sold to Hunter. Both Hubco and Data Doctors were licensed distributors of MAI computer products in the Reno, Nevada area.

Hunter brought this action against MAI and MAI Software for breach of the contracts that Hunter signed with Hubco and Data Doctors.[1] Because neither MAI nor MAI Software was a party to either of the two contracts upon which Hunter bases its action, liability on the part of the MAI companies was dependent upon an

---

[1]Hubco and Data Doctors were also defendants in this lawsuit but are not parties to this appeal.

agency relationship between Hubco and Data Doctors, the contracting parties in the Hunter agreements and the MAI companies.

Although the jury did find the MAI companies liable for breach of contract, the trial court determined that no evidence supported the jury's implicit finding of an agency relationship. Consequently, the court granted MAI's motion for judgment notwithstanding the verdict.[2]

In light of the review standards for judgments n.o.v., the issue before this court is whether any evidence, viewed in the light most favorable to Hunter, tends to support the jury's finding of agency and its verdict against the MAI companies. *See* Wilkes v. Anderson, 100 Nev. 433, 683 P.2d 35 (1984); Dudley v. Prima, 84 Nev. 549, 455 P.2d 31 (1968).

Given the necessary elements of an agency relationship, we conclude that the district court was correct in determining that no evidence supports the jury's verdicts against MAI and MAI Software.

In an agency relationship, the principal possesses the right to control the agent's conduct. Restatement (Second) of Agency § 14 (1958). This principle of agency, however, does not mean that an agency relationship exists every time one party has a contractual right to control some aspect of another party's business. *See, e.g.,* Schear v. Motel Management Corp. of America, 487 A.2d 1240 (Md.Ct.Spec.App. 1985); Murphy v. Holiday Inns, Inc., 219 S.E.2d 874 (Va. 1975).

The MAI/Hubco dealership agreement gave MAI some degree of control over the manner in which Hubco handled MAI products. For example, the agreement required Hubco to maintain an "appropriate" premises, to inform MAI of changes in Hubco management, and to submit monthly reports to MAI indicating the number of prepackaged Basic Four software units it installed. The agreement also granted MAI the right to monitor Hubco's advertisement of Basic Four products, the right to refuse to sell to Hubco if Hubco did not meet certain credit standards, and the right to rescind the dealership contract under specified conditions.

These types of controls, typical in manufacturer/distributor agreements, protect MAI's goodwill and the integrity of the Basic Four products line. They are not, however, the types of control that create a question of fact regarding agency. *See* Coty v. U.S.

---

[2]The district court also conditionally granted MAI's motion for a new trial pursuant to NRCP 50(c)(1). Because we affirm the judgment n.o.v., it is unnecessary to discuss the propriety of alternate relief granted in the form of a new trial.

Slicing Machine Co., Inc., 373 N.E.2d 1371 (Ill.Ct.App. 1978); Schear v. Motel Management Corp. of America, 487 A.2d 1240; Murphy ·v. Holiday Inns, Inc., 219 S.E.2d 874. Only when a manufacturer controls the day to day or operative details of the dealer's business is an agency potentially created. Ortega v. General Motors Corp., 392 So.2d 40 (Fla.Dist.Ct.App. 1981).

The MAI companies had no control over either Hubco's or Data Doctors' day to day business activities. MAI had no power to control Hubco business expenditures, fix Hubco customer rates, or demand a share in Hubco's profits. *See Murphy,* 219 S.E.2d at 878. Neither did MAI Software possess a power to control these aspects of Data Doctors' business. Further, the MAI companies had no control over the manner in which Hubco and Data Doctors conducted sales, performed installations, charged their customers, or dealt with their employees. *Id.*[3]

Another essential element of agency missing in this case is a fiduciary obligation on the part of the alleged agents to "act primarily for the benefit of [MAI] in matters connected with [their] undertaking." Restatement (Second) of Agency § 13 comment a. MAI sold computer equipment to Hubco and Data Doctors who resold that equipment to the public. Title to the goods and an obligation to pay a set price for them passed to the dealers as soon as MAI delivered. The dealers set the price at which they then sold the MAI products to their customers, and neither Hubco nor Data Doctors had any duty to account to MAI for prices charged or profits received. All companies at all times acted independently and in their own names.

In short, the only relationship which the evidence supports between the MAI companies and the two distributors is that of seller and buyer. *See* Alvarez v. Fleker, 41 Cal.Rptr. 514, 522 (Cf.App. 1964). *See also* Restatement (Second) of Agency § 14J.

Hunter also argues that Hubco and Data Doctors had apparent authority to represent MAI in their dealings with Hunter. This argument is without merit. The record reveals that Hunter did not rely on any MAI representations of agency when entering into its contracts with Hubco and Data Doctors. Absent a showing of third party reliance on some conduct of the alleged principal, there can be no apparent agency. Ellis v. Nelson, 68 Nev. 410, 419, 233 P.2d 1074, 1076 (1951).

Neither Hubco nor Data Doctors had actual or apparent authority to create a contractual relationship between MAI or MAI

---

[3]With regard to employees, the agreements specifically provided that MAI and Hubco and MAI Software and Data Doctors were to have no common employees and no common members of their respective boards-of-directors.

Software and Hunter or any other purchaser of Basic Four computer goods. The MAI dealership agreements with both parties specifically negated such authority; nothing else in the parties' agreements or conduct contradicted those disclaimers.

The district court was justified in concluding that, as a matter of law, the relationship between MAI and Hubco and MAI Software and Data Doctors was not that of principal and agent, but rather that of seller and buyer.

The judgment notwithstanding the verdict is affirmed.[4]

---

[4]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.