# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2019

_____

Michael Grassmueck, Bankruptcy   *
Trustee for the estates of W.J. Hoyt   *
Sons Management Co., Ltd. and   *
W.J. Hoyt Sons Ranches, MLP,   *

  *

    Appellant,   *

  *   Appeal from the United States

   v.   *   District Court for the

  *   District of Nebraska.

The American Shorthorn Association,   *
a Nebraska corporation; Dr. Roger E.   *
Hunsley, an individual,   *

  *

    Appellees.   *

_____

Submitted: December 17, 2004
Filed: March 31, 2005

_____

Before WOLLMAN, MAGILL, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Michael Grassmueck, a bankruptcy trustee, appeals from a grant of summary judgment in favor of the American Shorthorn Association ("ASA") and Dr. Roger Hunsley, the ASA's executive secretary and treasurer. Grassmueck is the bankruptcy

trustee[1] for the estate of W.J. Hoyt Sons Management Co., Ltd., W.J. Hoyt Sons Ranches, MLP, and numerous related entities. He brought this negligence action against the ASA and Dr. Hunsley. The district court[2] ruled that the Trustee's claims were barred by the equitable doctrine of *in pari delicto* and by the statute of limitations. We affirm on the first ground, and need not address the second.

I.

This lawsuit arises out of a complex scheme of investments that are alleged to have been administered in a fraudulent manner. Walter J. Hoyt III ("Hoyt") was the primary figure in a partnership with his brothers called "Hoyt & Sons Ranches." The family partnership raised cattle located for the most part in Nevada, Oregon, and California. It also actively sought investors in its cattle-raising operations until its dissolution in the late 1980s, when it was succeeded in relevant part by two other Hoyt-owned entities, W.J. Hoyt Sons Management Co., Ltd., and W.J. Hoyt Sons Ranches, MLP (together with Hoyt & Sons Ranches, the "Hoyt Entities").

The investments marketed by the Hoyt Entities were structured so that investors would become partners in one or more investment partnerships. These partnerships purchased cattle from the Hoyt Entities. The investment partnerships paid for the cattle by assuming notes owed to the Hoyt Entities in a face value amount equal to the price of the cattle. Investors became partners by assuming portions of these notes. Investors were to pay only interest on the investment partnership notes for five years, while claiming depreciation deductions on the cattle for tax purposes.

---

[1]Grassmueck is the third trustee appointed for this estate, and we refer to him and his predecessors as "the Trustee."

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

The Hoyt Entities represented that the cattle sold in this manner to the investment partnerships were purebred shorthorn cattle. The Hoyt Entities attracted large amounts of investment, allegedly in excess of $100,000,000, from thousands of investors over a decade.

There were several problems with the investments represented by the partnerships. The IRS did not agree that the cattle depreciation deductions claimed by investors were valid. *See Bales v. Comm'r*, 58 T.C.M. (CCH) 431 (1989). The Hoyt Entities did not own as many cattle as they sold, and the cattle were not worth as much as the investors paid for them.

The Hoyt Entities entered Chapter 7 bankruptcy proceedings on February 24, 1997. The Trustee filed a Complaint for Substantive Consolidation against the investment partnerships in September 1998, and the bankruptcy court granted the consolidation in November 1998. The bases alleged for consolidation were that the investment partnership assets and funds were intermingled with those of the Hoyt Entities, and that the investment partnerships and the Hoyt Entities were dominated by the same management. (J.A. at 821, 840-41). The investment partnerships, moreover, shared locations and employees with the Hoyt Entities and suffered from inadequate record-keeping. (*Id*. at 839).

According to the Trustee, the investment partnerships lacked independent substance: partners were moved repeatedly "from one partnership to another without the partner's knowledge," sometimes even "into partnerships that had previously been terminated." (*Id*. at 842). Investors who purchased cattle in an individual capacity were erroneously placed into investment partnerships. (*Id*.). As a result of inadequate documentation, ownership of the notes assumed by the investment partnerships was "[u]ncertain." (*Id*. at 821, 844).

-3-

The Trustee sued the ASA and Dr. Hunsley on November 3, 2000, alleging that they had breached their duties of care to the investment partnerships. The ASA, according to the Trustee, disregarded its protocols for certifying and registering shorthorn cattle as purebred, thus resulting in the certification and registration of cattle that were not purebred. Dr. Hunsley, as an officer of the ASA, was involved in the alleged negligent certification and registration procedures. He also acted as an expert witness for the Hoyt Entities in Tax Court proceedings. The Trustee alleges that the ASA's involvement "gave an aura of legitimacy to the entire Hoyt scheme," and that the ASA aided "the Hoyts by failing to exercise reasonable care in the performance of their registration and certification obligations to the detriment of the . . . [p]artnerships." (*Id*. at 755).

## II.

A Chapter 7 bankruptcy trustee is required to "collect and reduce to money the property of the estate for which the trustee serves." 11 U.S.C. § 704(1). The property of the estate created by the commencement of Chapter 7 proceedings consists of the items delineated in 11 U.S.C. § 541, which include "all legal or equitable interests of the debtor in property as of the commencement of the case" not expressly excluded. 11 U.S.C. § 541(a)(1). The estate, therefore, encompasses "causes of action belonging to the debtor at the time the case is commenced." 5 *Collier on Bankruptcy* ¶ 541.08, at 541-44 (15th ed. rev. 2004).

A trustee's ability to assert causes of action on behalf of the bankrupt estate is subject to any equitable or legal defenses that could have been raised against the debtor. 5 *Collier on Bankrutpcy*, *supra*, ¶ 541.08, at 541-46. In particular, the equitable defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor. *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 355-56, 358 (3d Cir. 2001); 5 *Collier on Bankruptcy*, *supra*, ¶ 541.08, at 541-46 n.11.

-4-

The doctrine of *in pari delicto* is the "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing."  Black's Law Dictionary 806 (8th ed. 2004).

Whether *in pari delicto* may be asserted by a third party against a wrongdoer's partner turns on the relationship between the partners, which is a question of state law.  *In re Newman*, 875 F.2d 668, 670 (8th Cir. 1989).  The district court deemed it unnecessary to resolve which state law applies to this dispute, and we observe that all States whose laws might govern this action[3] have adopted the Uniform Partnership Act ("UPA") in relevant part.  Cal. Corp. Code §§ 16100-16962; Neb. Rev. Stat. §§ 67-401to -467; Nev. Rev. Stat. §§ 87.010-.560; Or. Rev. Stat. §§ 67.005-.815.[4] There are no court decisions in these States dealing directly with the doctrine of *in pari delicto* and the imputation of wrongdoing by a general partner to a partnership under facts similar to this case, but the parties do not contend that any variation among the laws of the various States would affect our analysis.  The case is governed by a uniform statute and principles of common law that are likely to be uniform in each of the jurisdictions.

Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact to be resolved.  Fed. R. Civ. P. 56(e).  We review a grant of summary judgment *de novo*.

---

[3]Hoyt Entities pastured cattle in California, Nevada, and Oregon, and some of the investment partnerships were formed in California and Nevada.  Nebraska is the residence of Dr. Hunsley and the principal place of business of the ASA.

[4]California and Oregon have adopted the 1997 version of the UPA in relevant part, while Nebraska and Nevada retain some of the language of the 1914 UPA.  As discussed *infra* at 9, the 1997 revisions to the UPA effected no substantive change to the provisions of the UPA at issue here, so the variations between the versions are not relevant to our analysis.  Unless otherwise noted, we refer to the 1997 version of the UPA.

*Dillon v. Brown County*, 380 F.3d 360, 362-63 (8th Cir. 2004). The parties agree that if Hoyt's fraud can be charged to the cattle partnerships, the doctrine of *in pari delicto* will bar this negligence action against the ASA and Dr. Hunsley. The material facts underlying this issue are undisputed, so the case may be resolved by summary judgment. *See Zurad v. Lehman Bros. Kuhn Loeb, Inc.*, 757 F.2d 129, 133 (7th Cir. 1985) (describing the applicability of *in pari delicto* as "a legal question").

The district court held that Hoyt's fraud was chargeable to the investment partnerships. The court acknowledged that, under the UPA, the normal rule imputing knowledge from one partner to the partnership does not apply when the partner in question is acting fraudulently. This is known as the "adverse interest exception" to the imputation rules. The refusal to impute knowledge to the principal of an agent who is acting adversely to the principal is an acknowledgment that the usual legal fiction of complete agent-principal communication is unjustified where the agent is acting adversely. *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 773 (4th Cir. 1995). Section 102(f) of the UPA, which expresses this adverse interest exception, reads as follows:

> A partner's knowledge, notice, or receipt of notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, *except in the case of a fraud on the partnership committed by or with the consent of that partner.*

*Id.* (emphasis added).

The district court concluded that the adverse interest exception was qualified in these circumstances by the "sole actor" doctrine.[5] The sole actor doctrine provides

---

[5]The sole actor doctrine is also known in this context as the "sole representative" or "alter ego" doctrine. *See Young v. Deloitte & Touche, LLP*, No.

that "where the principal and agent are one and the same," the agent's knowledge is imputed to the principal despite the fact that the agent is acting adversely to the principal. *Mediators, Inc. v. Manney* (*In re Mediators, Inc.*), 105 F.3d 822, 827 (2d Cir. 1997). Where the principal and agent are alter egos, there is no reason to apply an adverse interest exception to the normal rules imputing the agent's knowledge to the principal, because "the party that should have been informed [of the fraudulent conduct] was the agent itself albeit in its capacity as principal." *Id.* In this case, the district court reasoned that the investment partnerships were mere alter egos of Hoyt during the period in which he defrauded investors, and that Hoyt's knowledge was properly imputed to the partnerships. (Add. at 14).

The Trustee advances two primary arguments why the district court was wrong. First, he argues that the sole actor doctrine should not have been applied because it contravenes the plain language of section 102(f) of the UPA, and because it is not established in the law of any of the States whose law might govern this dispute. Second, the Trustee maintains that even if the doctrine applies, Hoyt was not a sole actor with respect to the investment partnerships.

A.

We disagree with the Trustee's first contention. It is true that the plain language of the UPA codifies the adverse interest exception and does not expressly mention the sole actor doctrine. Section 104 of the UPA, however, provides that "the principles of law and equity" are to "supplement" the UPA "[u]nless displaced by

040807BLS, 2004 WL 2341344, at *9 (Mass. Super. Ct. Sept. 20, 2004) (noting that where an agent "is the sole representative in the transaction, and is in effect the alter ego, notice to him is imputable to the principal") (internal quotations and alterations omitted); William Meade Fletcher, 3 *Fletcher Cyclopedia of the Law of Private Corporations* § 827 (1931) ("[t]his qualification of the [adverse interest] exception [is] known as the "sole actor," or the "sole representative" doctrine").

particular provisions." UPA § 104(a). These principles of law and equity include "the law of agency," as well as the law relative to fraud and "other common law validating and invalidating causes." UPA § 104 cmt.[6] The sole actor doctrine is an established principle of agency law, *see* 3 Am. Jur. 2d, *Agency* § 281 (2004), and it therefore applies under the UPA unless displaced by a particular provision.

Section 102(f), the UPA's codification of the adverse interest exception, does not displace the sole actor doctrine. The 1914 version of the UPA was clear that supplemental principles of agency law were to govern the scope of imputation. In commentary to the section entitled "Knowledge and Notice," the 1914 UPA explained that "how far notice to an agent is notice to a principal" is "wholly a question of the law of agency," and "is not a question within the scope of a partnership act." UPA § 4 cmt. (1914). We think it is evident that the same holds true for imputation of knowledge. Subsequent revisions of the UPA were not intended to effect any substantive change from section 4 of the 1914 UPA. UPA § 104 cmt. The UPA's provision that the scope of imputation should be determined by agency law, therefore, suggests strongly that section 102(f) was not intended to displace any agency law exceptions to the adverse interest rule.

Application of the sole actor doctrine to the UPA's adverse interest rule is also consistent with established rules of statutory interpretation. Statutory codifications

---

[6]Section 104 is, in part, a revised version of section 4(3) of the 1914 UPA, which mandated that "[t]he law of agency shall apply under this act." UPA § 4(3) (1914); *see Kansallis Fin. Ltd. v. Fern*, 659 N.E.2d 731, 736 (Mass. 1996) (approving reference to the Restatement (Second) of Agency in applying the UPA "[b]ecause the [UPA] specifically provides that the law of agency applies"). According to the commentary accompanying the current version of the UPA, section 104's general statement that "the principles of law and equity supplement" the UPA is intended to combine several rules contained in section 4 of the 1914 UPA, including section 4(3). The comment after section 104 states that "[n]o substantive change from . . . the [1914] UPA . . . is intended."

of common law rules are often subject to implicit exceptions that were recognized at common law. *See Sabbath v. United States*, 391 U.S. 585, 591 n.8 (1968) (stating that "there is little reason why" common law exceptions to announcement and entry rules would not also apply to the statutory embodiment of those rules, "since they existed at common law, of which the statute is a codification"); *Hatley v. Stafford*, 588 P.2d 603, 605 n.1 (Or. 1978) (implying common law exceptions to the statutory parol evidence rule where the statute was "a codification of the common law parol evidence rule"); *People v. Maddox*, 294 P.2d 6, 9 (Cal. 1956) (holding that a statutory codification of the common law "may reasonably be interpreted as limited by . . . common law rules" even though the common law rules are not mentioned in the statute); *Cram v. Chicago, B & Q R.R. Co.*, 122 N.W. 31, 33 (Neb. 1909) ("It is also a truism that:  When statutes are made there are some things which are exempted and foreprized out of the provisions thereof, by the law of reason, though not expressly mentioned.  Thus, things for necessity's sake, or to prevent a failure of justice, are excepted out of statutes.") (internal quotation omitted).  Section 102(f) is, in relevant part, a codification of the common law adverse interest rule, *see* Restatement (Second) Agency § 282 (1958), to which the sole actor doctrine was a common law exception.  None of the common law exceptions to the adverse interest rule are mentioned in section 102(f), and there is no indication that the drafters of the UPA's general "Knowledge and Notice" provision wished to eliminate them.  We therefore believe that the adverse interest rule in statutory form remains subject to the sole actor doctrine, as it did at common law.[7]

The Trustee's argument that the district court erred by applying the sole actor exception because none of the States involved has embraced the doctrine is similarly unpersuasive.  While it may be true that the sole actor exception is not well-

---

[7]The sole actor doctrine has been applied frequently in the corporate context, even where a state statutory scheme governs many aspects of the relationship between corporate employees and corporations.  *E.g., In re Mediators*, 105 F.3d at 827.

developed in the law of the States that potentially governs this action, that does not mean that the courts of those States would decline to apply the exception if faced with these facts. If the path that a state court would follow when presented with a novel question is unclear, then we may decide the issue by predicting what the state court would do. *Karas v. Am. Family Ins. Co.*, 33 F.3d 995, 999-1000 (8th Cir. 1994).

In formulating our prediction, the approach taken by other jurisdictions is relevant. The sole actor doctrine is an agency law principle well-established at common law. *See Munroe v. Harriman*, 85 F.2d 493, 496 (2d Cir. 1936) ("[T]here is substantial authority in support of the 'sole actor' doctrine.").[8] Principles of agency law, moreover, are incorporated into the UPA in all of the relevant States. *See* Neb. Stat. § 67-304(3); Cal. Corp. Code § 16104; Or. Rev. Stat. § 67.020; Nev. Rev. Stat. § 87.040.

California and Oregon have applied the sole actor doctrine. *Nat'l Bank of San Mateo v. Whitney*, 180 P. 845, 848-49 (Cal. Dist. Ct. App. 1919); *Saratoga Inv. Co. v. Kern*, 148 P. 1125, 1127-28 (Or. 1915). There is no indication that Nebraska or Nevada would apply the established principles of agency law any differently. *See Rose v. Gisi*, 298 N.W. 333, 337 (Neb. 1941) (citing the Restatement (Second) of Agency and Massachusetts case law for a "generally accepted rule" regarding principal liability); *Hunter Mining Labs., Inc. v. Mgmt. Assistance, Inc.*, 763 P.2d 350, 352 (Nev. 1988) (citing the Restatement (Second) of Agency and Maryland, Illinois, Virginia, Florida, and California case law regarding the scope of control required to establish an agency relationship); *see also Allard v. Arthur Anderson &*

---

[8]Cases applying the sole actor doctrine to impute an agent's fraud to his principal are numerous. *See, e.g., Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 222 (1923); *Schneider v. Thompson*, 58 F.2d 94, 99 (8th Cir. 1932); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.*, 80 F. Supp.2d 129, 138 (S.D.N.Y. 1999) (applying Texas law); *Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 645 P.2d 1122, 1127 (Wash. Ct. App. 1982).

*Co.*, 924 F. Supp. 488, 495 (S.D.N.Y. 1996) (refusing to apply adverse interest exception to the imputation of knowledge where the agent acts both for himself and for his principal because "there is no reason to believe that a Michigan court would depart from the New York and Restatement rule" to the same effect). Accordingly, we believe that under the law of any of the jurisdictions that might govern this action, the sole actor doctrine would apply as an exception to the adverse interest rule stated in Section 102(f) of the UPA.

B.

The Trustee's second argument, that Hoyt was not a sole actor with respect to the investment partnerships, also fails. As discussed above, a sole actor relationship is found when "the principal and agent are one and the same." *In re Mediators, Inc.*, 105 F.3d at 827. Here, the investment partnerships lacked independent identities. The Trustee conceded in connection with his motion for summary judgment that the investment partnerships "were entities of convenience and not separate business units." (J.A. at 835). He also acknowledged that "[t]he Hoyt cattle investment operation was run by Walter J. Hoyt III as a unified business," and that "[a]ll entities were used as instrumentalities by Walter J. Hoyt III in an attempt to gain tax advantages for himself and his investors." (*Id.* at 845). The Trustee admitted in interrogatory answers, moreover, that "there is no way to identify any of the individual '[investment] [p]artnerships.' Instead, there was a single entity which commingled all assets and liabilities of the so-called individual partnerships." (*Id.* at 739).

Hoyt's actions here were indistinguishable from those of the investment partnerships. Hoyt was made general partner of all of the investment partnerships, thereby assuming the role of principal as well as an agent. *See Goehring v. Superior Court*, 73 Cal. Rptr. 2d 105, 112 (Cal. Dist. Ct. App. 1998) ("[g]eneral partners are both agents and principals of the partnership"). The Trustee contends that Hoyt was

not "'one and the same' with the partnerships" because "each partnership was made up of a number of general partners." (Appellant's Brief at 28). The Trustee has stated in the district court, however, that "[t]he investor partners played no part in the management of their . . . [p]artnerships or the other Hoyt [E]ntities." (J.A. at 840). In addition, Hoyt received a power of attorney from each investor, thus enabling him to act on the investor's behalf with respect to the investment partnerships, and giving Hoyt singular domination over the partnerships. (*Id*.). Indeed, according to the Trustee's own allegations, Hoyt dominated both the investment partnerships and the Hoyt Entities. (J.A. at 821). No similar facts are alleged with respect to the investors.

The Trustee argues that Hoyt was not the "sole representative" of the investment partnerships because a Hoyt Entity employee, Marketing Director Donna Schnitker, also dealt with the ASA. The ASA and Hunsley do not dispute the allegation that Schnitker dealt with the ASA on behalf of Hoyt. This is not a material fact, however, because the sole actor doctrine does not require that the agent whose knowledge is to be imputed literally act alone; the doctrine still applies if the "sole actor" uses subordinates in perpetrating a fraud. *See Munroe*, 85 F.2d at 496 (imputing bank president's knowledge of fraud to the bank under the sole actor rule despite the involvement of other bank employees). The central inquiry in the sole actor context is whether the agent committing fraud is also the principal that should have been informed. *In re Mediators, Inc.*, 105 F.3d at 827. There is no allegation here that Schnitker was a partner in or a principal of the investment partnerships. In fact, the only evidence in the record indicates that Schnitker "had nothing to do with the investor partnerships," (J.A. at 726, 731), and worked only as an employee of one of the Hoyt Entities. (*Id*. at 708-11).

The Trustee argues finally that the sole actor doctrine cannot be asserted by the ASA because it was "not acting in good faith." (Appellant's Br. at 29). It is true that the sole actor exception "may not be invoked where third persons use the agent to further their own frauds upon the principal." *Bland v. Allstate Ins. Co.*, 944 S.W.2d

-12-

372, 376 (Tenn. App. 1996) (internal quotation omitted). The Trustee does not allege, however, that the ASA or Dr. Hunsley used Hoyt to further their own frauds upon the investors. The amended complaint expressly disclaims any fraud on the part of the ASA or Dr. Hunsley, and restricts its allegations to mere negligence. (J.A. at 755) (the "ASA and Hunsley . . . did not themselves have fraudulent intent").

\*     \*     \*

The undisputed facts show that the investment partnerships established by Hoyt were not independent entities, but existed in form only and were indistinguishable from Hoyt. As a result, the sole actor doctrine applies, and Hoyt's fraud is imputed to the investment partnerships. Because the partnerships are deemed to have participated in Hoyt's wrongdoing, the Trustee is barred by the doctrine of *in pari delicto* from pursuing this negligence action against the ASA and Dr. Hunsley. Accordingly, we affirm the judgment of the district court.

————————————————