# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3867

_____

| | | |
|---|---|---|
| In re: Senior Cottages of America, LLC, | * | |
| | * | |
| | * | |
| Debtor, | * | |
| ----------------------------------------- | * | |
| | * | |
| Timothy D. Moratzka, Trustee of the | * | |
| Bankruptcy Estate of Senior Cottages | * | |
| of America, LLC, | * | Appeal from the United States |
| | * | District Court for the |
| Plaintiff - Appellant, | * | District of Minnesota. |
| | * | |
| v. | * | |
| | * | |
| Richard Morris; | * | |
| Morris, Carlson, Hoelscher, P.A., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: May 17, 2006
Filed: April 2, 2007

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and COLLOTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

The trustee for the bankruptcy estate of Senior Cottages of America, LLC, and Senior Cottages Management, LLC,[1] appeals from the district court's order denying him leave to amend his complaint. The amended complaint alleges that the lawyers for Senior Cottages, namely Richard Morris, Michael Cohen, and the firm of Morris, Carlson, Hoelscher, P.A., committed malpractice and aided and abetted the breach of fiduciary duty by Murray Klane, who was governor, manager, and majority interest owner of Senior Cottages. The complaint, as amended, alleges that the lawyers assisted Klane in looting Senior Cottages' assets. The district court held that the trustee lacked standing to bring the claim. Moratzka v. Senior Cottages of America, LLC, No. Civ. 05-809 (DWF), 2005 WL 2000185, at *3 (D. Minn. Aug. 18, 2005). We reverse and remand.

The trustee's first complaint was dismissed as to Morris and the Morris, Carlson firm[2] by the bankruptcy court on the ground that the trustee had alleged only injury to the creditors of Senior Cottages, not to Senior Cottages itself because there was no allegation that Senior Cottages had a value in excess of creditors' claims against it. Moratzka v. Morris (In re Senior Cottages of America, LLC), 320 B.R. 895, 901 (Bankr. D. Minn. 2005). The bankruptcy court added in a footnote that even if the trustee had alleged injury to Senior Cottages, the complaint "might" not have been adequate because the claims might be barred by the defense of in pari delicto.[3] Id. at n.12.

---

[1] The amended complaint refers to the two entities collectively, and we will do so as well. Senior Cottages Management owned 100% of the stock of Senior Cottages of America.

[2] Michael Cohen defaulted, and a default judgment was entered against him.

[3] Pari delicto is Latin for "equal fault." The in pari delicto doctrine is the principle that a plaintiff who participated in wrongdoing may not recover damages based on the wrongdoing. Black's Law Dictionary 806 (8th ed. 2004).

The trustee sought to amend the complaint. The proposed amended complaint alleged as follows. Senior Cottages, a limited liability company, was in the business of developing, building, and managing senior citizen housing projects, which qualified for low income housing tax credits. Murray Klane was one of the two sole governors of Senior Cottages and was also Chief Manager, in complete control of the daily operations of the company. As of April 1, 1998, Klane owned a 60% interest in Senior Cottages.[4] In 1998, Senior Cottages was insolvent, in that it was not paying debts as they became due. The amended complaint alleges that because of its insolvency, Senior Cottages needed to sell its valuable assets (the housing projects)–presumably, to an entity that could benefit from the tax credits.[5]

Rather than finding an arm's-length buyer, Klane formed a new entity, Millennium Properties, LLC, in August 1998, and caused Senior Cottages to transfer all or substantially all of the assets of Senior Cottages to Millennium, including eleven housing projects. In return for the assets, Millennium assumed debt secured by the assets, but did not pay anything. In separate litigation brought by the minority interest-owners of Senior Cottages, a Minnesota state court found that the value of the consideration received by Senior Cottages was not reasonably equivalent to the value

---

[4]The amended complaint cites passim the judgment of a Minnesota state trial court in the fraudulent transfer case brought by other Senior Cottages shareholders against Klane and Senior Cottages, DKM II v. Senior Cottages of America, LLC, No. 98-16654 (Minn. D. Ct. Apr. 12, 2000). In assessing the adequacy of a complaint, we may consider documents incorporated by reference in the pleadings, in particular "matters of public and administrative record referenced in the complaint." Deerbrook Pavilion, LLC v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000); see also Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005). We will therefore consider the findings of the state court in the fraudulent transfer case in assessing the adequacy of the amended complaint.

[5]The trustee's brief elaborates on this allegation, stating that if Senior Cottages filed for bankruptcy without selling the projects, the value of the tax credits would be lost.

of the assets transferred to Millennium and that the transfer was fraudulent. The amended complaint alleges that the value of the projects was at least $4.8 million. Additionally, Klane directed cash payments to Millennium which should have been made to Senior Cottages.

Morris and his law firm were outside counsel to Senior Cottages and also represented Klane. They advised Senior Cottages to transfer the assets to Millennium and substantially assisted the transaction. The amended complaint alleges that Morris knew that the transfer was for inadequate consideration, that Klane was breaching his fiduciary duties to Senior Cottages in making the transfer, and that the transfer damaged Senior Cottages in the amount of at least $4.8 million.

The amended complaint alleged counts against Morris and his law firm for negligence and aiding and abetting Klane's breach of fiduciary duty.

The bankruptcy court denied the motion to amend the complaint on the ground of futility, reasoning that the in pari delicto defense would bar the complaint. The trustee appealed to the district court, which affirmed on a different theory:

> [T]he Court finds that Trustee lacks standing to bring the legal malpractice and aiding and abetting claims against [Morris and his firm]. As previously discussed, the Eighth Circuit has held that a trustee can only bring those claims that are "the property of the estate." [In re Ozark Rest. Equip. Co., 816 F.2d 1222, 1224 (8th Cir. 1987)]. Conversely, a trustee cannot bring a claim on behalf of the creditors of a debtor corporation.
> ... Nowhere in the Proposed Amended Complaint is there an allegation that Debtor would have remained solvent absent the transfer. Ultimately, Trustee is unable to show that Debtor would act as anything other than a conduit of recovery for creditors under the Proposed Amended Complaint.

-4-

<u>Moratzka v. Senior Cottages of America, LLC</u>, No. Civ. 05-809, 2005 WL 2000185, at *3 (D. Minn. Aug. 18, 2005).

In bankruptcy appeals, we sit as a second court of review, reviewing the bankruptcy court's decision by the same standards as the district court applies. <u>In re Reynolds</u>, 425 F.3d 526, 531 (8th Cir. 2005), <u>cert. denied</u>, 127 S. Ct. 46 (2006). Although ordinarily the decision of whether to allow a plaintiff to amend the complaint is within the trial court's discretion, when a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion, Fed. R. Civ. P. 12; our review of that legal conclusion is de novo. <u>Marmo v. Tyson Fresh Meats, Inc.</u>, 457 F.3d 748, 755 (8th Cir. 2006); <u>United States ex rel. Gaudineer & Comito, LLP v. Iowa</u>, 269 F.3d 932, 936 (8th Cir. 2001). In determining whether a complaint states a claim, we accept as true all factual allegations of the complaint. <u>Mattes v. ABC Plastics, Inc.</u>, 323 F.3d 695, 698 (8th Cir. 2003).

It is the duty of the trustee in bankruptcy to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(1). The property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Causes of action are interests in property and are therefore included in the estate; it follows that the trustee has standing under § 704(1) to assert causes of action that belonged to the debtor at the time of filing bankruptcy. <u>Mixon v. Anderson (In re Ozark Rest. Equip. Co.)</u>, 816 F.2d 1222, 1225 (8th Cir. 1987).

Senior Cottages is a limited liability company, not a corporation. However, Minnesota limited liability companies share many of the properties of corporations. <u>See</u> Minn. Stat. Ann. § 322B.01 note (West 2001) (Overview Comments, Relevance of Chapter 302A in Interpreting and Applying Chapter 322B) (most of governance and management provisions of limited liability company statute drawn from business

corporation statute).  Limited liability companies can sue and be sued in their own name, Minn. Stat. Ann.  § 322B.20 subd. 3; their directors and managers owe the company duties of care and loyalty, Minn. Stat. Ann. §§ 322B.663 subd. 1, 322B.69; a limited liability company is an entity distinct from any of its members, Minn. Stat. Ann. § 322B.88 note; members are not subject to liability for the company's debts, Minn. Stat. Ann. § 322B.303 subd. 1; and the limitation of liability may be forfeited under the same conditions that would warrant piercing the corporate veil, Minn. Stat. Ann. § 322B.303 subd. 2.  Although the Minnesota limited liability company statute does not expressly provide for derivative suits, it is likely that such suits would be recognized by the Minnesota courts.  Carter G. Bishop & Daniel S. Kleinberger, Limited Liability Companies: Tax and Business Law ¶ 10.07[2] (2007) (treatise by the Chair and the Reporter of the Limited Liability Company Joint Committee of the Business Law, Tax Law and Real Property Sections of the Minnesota State Bar Association); see generally Daniel S. Kleinberger, Direct versus Derivative and the Law of Limited Liability Companies, 58 Baylor L. Rev. 63, 66-67 (2006) ("Almost all LLC cases addressing the direct/derivative distinction follow rules developed in corporate-law cases.").  It is therefore appropriate to look to the law governing claims on behalf of corporations for guidance in this case.

Whether a particular cause of action arising under state law belonged to the debtor in bankruptcy or to someone else is determined by state law.  See Ozark Rest. Equip., 816 F.2d at 1225.  It is generally recognized that a bankruptcy trustee has authority "to bring an action for damages on behalf of a debtor corporation against corporate principals for alleged misconduct, mismanagement, or breach of fiduciary duty, because these claims could have been asserted by the debtor corporation, or by its stockholders in a derivative action."  Id.

> A director is a fiduciary. So is a dominant or controlling stockholder or group of stockholders. . . . While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's

derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee.

Pepper v. Litton, 308 U.S. 295, 306-07 (1939) (citations and footnotes omitted). Under Minnesota law as well, "waste and misappropriation of corporate assets 'are traditional derivative claims that rightfully belong to the corporation.'" Popp Telecom, Inc. v. Am. Sharecom, Inc., 361 F.3d 482, 492 (8th Cir. 2004) (quoting Wessin v. Archives Corp., 592 N.W.2d 460, 465 (Minn. 1999)).

If the corporation owned a cause of action against the principal who breached a duty, it follows that it also owns the cause of action for aiding and abetting the principal's breach. Thus, in Seitz v. Michel, 181 N.W. 106 (Minn. 1921), a shareholder sued third persons for conspiring with a corporate officer to waste the corporation's assets. The complaint was dismissed on the ground that the shareholder could not bring the action because it belonged to the corporation and had to be brought derivatively.

Similarly, the estate owns a claim for malpractice against the debtor's lawyers that accrued before the filing of the petition. Appletree Square I Ltd. P'ship v. O'Connor & Hannan, 575 N.W.2d 102, 104 (Minn. 1998). In National City Bank v. Coopers & Lybrand, 409 N.W.2d 862, 868-70 (Minn. Ct. App. 1987), the Minnesota Court of Appeals held that creditors lacked standing to bring a malpractice suit against a corporation's accountants for negligence causing loss to the corporation; instead, the malpractice claim belonged to the injured corporation itself:

> The noteholders' alleged injury exists only because GCC was injured, and the amount of their injury is wholly dependent on the diminution in the value of GCC's assets. This is the essence of a derivative claim.

Id. at 869.

-7-

In contradiction to this reasoning and authority, in the Second Circuit, there is a special rule that a corporation does not have standing to bring a claim against outsiders for defrauding a corporation with the cooperation of an insider of the corporation. The rule arose in Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991). There, the sole shareholder, sole director and president of the corporation engaged in stock trades that allegedly dissipated the assets of the corporation. Id. at 117. The corporation filed for bankruptcy, and the bankruptcy trustee initiated arbitration against the corporation's stockbroker for fraud. Id. The district court enjoined the trustee from proceeding with the arbitration, and the Second Circuit affirmed. Rather than relying on the defense of in pari delicto or simply the absence of the element of reliance for the fraud claim, the Second Circuit analyzed the case as presenting a constitutional standing problem:

> In our analysis of the question presented, the "case or controversy" requirement coincides with the scope of the powers the Bankruptcy Code gives a trustee, that is, if a trustee has no power to assert a claim because it is not one belonging to the bankrupt estate, then he also fails to meet the prudential limitation that the legal rights asserted must be his own.

Id. at 118. The Second Circuit framed a broad standing rule holding, "A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."[6] Id. at 120. However, in addition to the rule just stated, Wagoner also relied on the fact that the defendant broker owed no fiduciary duty to the corporation because the corporation's trading accounts were non-discretionary. Id. Although Wagoner has been followed in the Second Circuit, it has also been criticized for characterizing an in pari delicto defense as a standing issue.

---

[6]The Second Circuit did not limit this rule to the case where the corporation is insolvent; where the defrauded corporation has sufficient assets to pay creditors in full, it is not clear what injury the creditors would have suffered by the fraud on the corporation. Since we do not espouse the Wagoner rule, we do not have to resolve this difficulty.

See Jeffrey Davis, Ending the Nonsense: The In Pari Delicto Doctrine Has Nothing to Do with What Is § 541 Property of the Bankruptcy Estate, 21 Emory Bankr. Dev. J. 519, 522-530 (2005); John T. Gregg, The Doctrine of In Pari Delicto: Recent Developments, 2006 Norton Annual Survey of Bankruptcy Law Part I § 5; Dan Schechter, Trustee Lacks Standing to Sue Because Corporate Insiders' Prepetition Behavior Is Imputed to Corporation, 2003 Comm. Fin. Newsl. 61 ("In my opinion, the rule in Wagoner is nonsensical. . . [T]he injury forming the basis of the trustee's complaint is to the corporation itself. . . ."). Gradually, the Second Circuit and the lower courts within that circuit have shifted from treating the question as one of standing to treating it as an affirmative defense. Compare Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1094-95 (2d Cir. 1995), with Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147,156-57 (2d Cir. 2003) (applying Texas law, representatives of bankruptcy estate had standing to sue debtor's accountants despite existence of in pari delicto defense), In re Grumman Olson Indus., Inc., 329 B.R. 411, 424 n.5 (Bankr. S.D.N.Y. 2005) (explaining differences between Wagoner rule and in pari delicto defense), and Bondi v. Bank of America Corp. (In re Parmalat), 383 F. Supp. 2d 587, 595-99 (S.D.N.Y. 2005).

Several other circuits have declined to conflate the constitutional standing doctrine with the in pari delicto defense. The Third Circuit explained: "An analysis of standing does not include an analysis of equitable defenses, such as in pari delicto. Whether a party has standing to bring claims and whether a party's claims are barred by an equitable defense are two separate questions, to be addressed on their own terms." Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 346 (3d Cir. 2001). Accord Official Comm. of Unsecured Creditors v. Edwards, 437 F.3d 1145, 1149-50 (11th Cir. 2006) (holding that trustee had standing, but federal claim was barred by in pari delicto and state claim for aiding and abetting breach of fiduciary duty was not cognizable under Georgia law), cert. denied, 127 S. Ct. 45 (2006); Baena v. KPMG, LLP, 453 F.3d 1, 6-10 (1st Cir. 2006) (trustee's case barred by in pari delicto, but that doctrine "has nothing to do with Article III requirements");

O'Halloran v. First Union Nat'l Bank, 350 F.3d 1197, 1203-04 (11th Cir. 2003) (corporation's trustee had standing to sue bank for aiding and abetting embezzlement by corporate fiduciary); Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust), 25 F.3d 1281, 1286 (5th Cir. 1994) ("That the defendant may have a valid defense on the merits of a claim brought by the debtor goes to the resolution of the claim, and not to the ability of the debtor to assert the claim."); see Terlecky v. Hurd (In re Dublin Securities, Inc.), 133 F.3d 377, 380 (6th Cir. 1997) (considering in pari delicto defense and declining to consider standing argument); see also 13 Charles Alan Wright et al., Federal Practice and Procedure § 3531 (2006 Supp.) (stating with regard to the standing argument rejected in Lafferty: "The urge to cloak routine cause-of-action questions in Article III garb seems to be irresistible.").

We agree with the First, Third, Fifth, and Eleventh Circuits that the collusion of corporate insiders with third parties to injure the corporation does not deprive the corporation of standing to sue the third parties, though it may well give rise to a defense that will be fatal to the action. Standing is one aspect of the constitutional requirement that courts may only decide cases or controversies. Novartis Seeds, Inc. v. Monsanto Co., 190 F.3d 868, 871 (8th Cir. 1999). "To have standing, a plaintiff must allege an injury that is fairly traceable to the defendant's conduct, and the requested relief must be likely to redress the alleged injury." Id. The existence of a defense to a cause of action does not deprive the plaintiff of standing, as the late Judge Richard Arnold explained in Novartis Seeds:

> Monsanto's contention, if upheld, establishes no more than a defense on the merits, and the distinction between such a defense and subject-matter jurisdiction is a vital one.

Id. ; see also 13 Charles Alan Wright et al., Federal Practice and Procedure § 3531 (2006 Supp.) ("Judge Richard S. Arnold got it exactly right in Novartis Seeds, Inc. v. Monsanto Co. . . . ."). The in pari delicto doctrine is a defense. See Grassmueck v.

-10-

Am. Shorthorn Ass'n, 402 F.3d 833, 836 (8th Cir. 2005); State v. AAMCO Automatic Transmissions, Inc., 199 N.W.2d 444, 446 (Minn. 1972); Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.), 335 B.R. 539, 547 (D. Del. 2005). Even if an in pari delicto defense appears on the face of the complaint, it does not deprive the trustee of constitutional standing to assert the claim, though the defense may be fatal to the claim.

Because the bankruptcy trustee is empowered by law to assert causes of action belonging to the debtor at the time of filing, 11 U.S.C. § 704(1), the question of standing here depends on whether Senior Cottages alleged that it suffered an injury traceable to actions of its lawyers which could be redressed by the requested award of damages. The amended complaint alleges that Morris and the law firm participated in stripping Senior Cottages of its assets without adequate compensation. The state court decision incorporated by reference in the amended complaint stated that "Klane directed payments belonging to [Senior Cottages] to Millennium," listing some $57,000 in cash payments that were diverted. In addition to the diverted cash payments, Klane transferred projects which carried with them the right to tax credits. Even though Senior Cottages could not use the tax credits itself because of its impending bankruptcy, the trustee has alleged that the transferrable tax credits, as well as development and management fees associated with the projects, made the projects to which they were attached valuable to potential buyers who could use the tax credits. See Amended Complaint at ¶15 (alleging Klane recognized "potential incremental value in the development fees, management fees and transferable tax credits if [the projects] could be secured and transferred to another entity"). Rather than selling these assets for their fair value in an arm's length transaction, the amended complaint alleges that Klane caused them to be transferred to Millennium for less than their fair value. The trustee alleged that Millennium "paid nothing" for the assets. This appears to be somewhat misleading, for while the state court judgment confirms that Millennium paid no cash, it also shows that Millennium did assume some debt. The state court opinion in the record before us did not find the exact amount by which the

-11-

value of the assets transferred to Millennium exceeded the value of the consideration given by Millennium, but it held that the consideration was "not reasonably equivalent" to the value of the assets Millennium received. That holding suffices to allege some injury. The amended complaint alleged that Morris and the law firm substantially assisted Klane in arranging this transaction to the detriment of their client, Senior Cottages. This is plainly an allegation of injury traceable to the lawyers' conduct and injury of the sort remediable by an award of damages.

Of course, in order to recover damages, the trustee will eventually have to prove the amount by which the fair market value of the assets and cash transferred to Millennium exceeded the value of the debt Millennium assumed, since Senior Cottages would only have been injured to the extent of that shortfall. This observation may be obvious, but it is worth making because the trustee pleads that Senior Cottages was damaged in the amount of approximately $4.8 million, apparently without offsetting that amount by the benefit Senior Cottages received when Millennium assumed the debt associated with the projects. Although this figure appears to over-state the amount of injury, nevertheless, the assertions in the amended complaint and incorporated state court judgment are sufficient to allege some injury and thus to survive a motion to dismiss for lack of standing.

The question remains whether the amended complaint should fail on the ground of in pari delicto. This Circuit has held that the defense of in pari delicto can bar a claim by a bankruptcy trustee against a third party for pre-petition harm to a debtor when the debtor's agents colluded in the wrongful conduct alleged. Grassmueck, 402 F.3d 841-42. However, Morris and the law firm did not argue in their brief that the complaint failed because of the in pari delicto defense; moreover, when asked at oral argument before this court, their counsel expressly stated that they do not assert the defense. The defense is not without difficulties on the pleaded facts of this case, see Grassmueck, 402 F.3d at 837-841 (discussing adverse interest exception to in pari delicto doctrine and sole actor exception to exception), and we will not brave those

-12-

difficulties <u>sua</u> <u>sponte</u>. <u>Cf.</u> <u>In re Parmalat</u>, 383 F. Supp.2d at 599 (<u>in pari delicto</u> not a defense to aiding and abetting looting by debtor's insiders). Obviously, if Morris and the law firm choose to plead the defense of <u>in pari delicto</u>, these questions can be developed upon remand.

Morris and the law firm also contend that the amended complaint would not state a claim because of the rule in <u>In re Ozark Restaurant Equipment Co.</u>, 816 F.2d at 1225-1226, which held that a bankruptcy trustee cannot bring a suit to pierce the corporate veil of the debtor under Arkansas law. <u>Ozark Restaurant</u> specifically held that under Arkansas law, an action for piercing the corporate veil is based on harm not to the corporation, but to third persons. <u>Id.</u> The trustee in <u>Ozark Restaurant</u> sought to recover for harm to creditors, whereas the trustee in this case seeks to recover for harm to the debtor company resulting from the defendants' breaches of duties owed to the company. That is the kind of harm that <u>Ozark Restaurant</u> stated that a trustee could assert. <u>Id.</u> at 1225.

Morris and Morris, Carlson further argue that since the amended complaint alleges that Senior Cottages was "insolvent"[7] in 1998, any harm done to the corporation injured the creditors, not the corporation. This argument would add a significant new element to what a trustee has to prove to recover property for a bankrupt estate under § 541, since undoubtedly many debtors are insolvent at the time causes of action accrue. The argument that a cause of action for harm to an insolvent corporation belongs to the creditors rather than the corporation itself was rejected by

_____

[7]The amended complaint does not specify whether Senior Cottages was insolvent in the sense of having greater liabilities than assets, or in the sense of being unable to pay its debts as they came due. <u>See</u> <u>Black's Law Dictionary</u> 812 (8th ed. 2004) (giving both meanings). However, the amended complaint incorporated by reference the Minnesota state court judgment in <u>DKM II v. Senior Cottages of America, LLC</u>, which found: "At the time of the transfer [Senior Cottages was] not paying debts as they became due and [was], therefore, statutorily 'insolvent' pursuant to Minn. Stat. § 513.42, subd. b."

the Third Circuit in <u>Lafferty</u>, 267 F.3d at 348-49, and by the Ninth Circuit in <u>Smith v. Arthur Andersen LLP</u>, 421 F.3d 989, 1004 (9th Cir. 2005).  Both of those cases discussed the issue in the context of "deepening insolvency" claims, but their reasoning is by no means limited to such cases.  In <u>Lafferty</u> the Third Circuit said:

> We think it is irrelevant that, in bankruptcy, a successfully prosecuted cause of action leads to an inflow of money to the estate that will immediately flow out again to repay creditors:
>> The . . . assertion that this action will benefit creditors is not an admission that this action is being brought on their behalf.  In a liquidation case, it is commonplace for a trustee to pursue an action on behalf of the debtor in order to obtain a recovery thereon for the estate.  If the trustee is successful in the action, the recovery which he obtains becomes property of the estate and is then distributed pursuant to the scheme established by § 726(a).  Simply because the creditors of a[n] estate may be the primary or even the only beneficiaries of such a recovery does not transform the action into a suit by the creditors.  Otherwise, whenever a lawsuit constituted property of an estate which has insufficient funds to pay all creditors, the lawsuit would be worthless since under [<u>Caplin v. Marine Midland Grace Trust Co.</u>, 406 U.S. 416 (1972),] it could not be pursued by the trustee.

267 F.3d at 348-49 (quoting <u>In re: Jack Greenberg, Inc.</u>, 240 B.R. 486, 506 (Bankr. E.D. Pa. 1999)).  The Ninth Circuit followed the same reasoning:

> It is, of course, true that the dissipation of assets limited the firm's ability to repay its debts in liquidation.  Acknowledgment of this fact is not, however, a concession that only the creditors, and not Boston Chicken itself, have sustained any injury.  Instead, it is a recognition of the economic reality that any injury to an insolvent firm is necessarily felt by its creditors. . . . The existence of such indirect injury to creditors notwithstanding, it is "axiomatic" that a trustee has authority to bring

-14-

"actions against the debtor's officers and directors for breach of duty or misconduct."

<u>Smith</u>, 421 F.3d at 1004 (citations omitted).

We conclude that the trustee is the proper party to assert the claims against Morris and Morris, Carlson for malpractice and aiding and abetting Klane's breach of fiduciary duty.

The next question is whether the amended complaint adequately states a cause of action for those two claims. After the close of briefing in this case, the Supreme Court of Minnesota decided <u>Jerry's Enterprises, Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.</u>, 711 N.W.2d 811, 816-19 (Minn. 2006), holding that a cause of action for legal malpractice arising out of representation in a transaction consists of four elements: (1) the parties must have established an attorney-client relationship; (2) the lawyer must have breached a duty of care or contractual obligation; (3) the breach must have caused damages; and (4) but for the breach, the client would have obtained a more favorable result in the transaction. Before the decision in <u>Jerry's Enterprises</u>, it was not clear that the fourth element was necessary in cases arising out of representation in transactions, as opposed to cases involving damage to a cause of action. <u>See</u> <u>Fiedler v. Adams</u>, 466 N.W.2d 39, 42 (Minn. Ct. App. 1991) (fourth element not necessary in transactional case). The trustee advised us at oral argument that he had not included the fourth element in the malpractice count, but with permission, he would amend the complaint to satisfy the requirement of the fourth element. We remand for the bankruptcy court to exercise its discretion regarding whether to allow the trustee to amend the complaint in an attempt to state the missing element, in light of the recent clarification in Minnesota law.

Even if the trustee fails to state a claim for malpractice, the amended complaint before us states a claim for aiding and abetting a breach of fiduciary duty. Under

-15-

Minnesota law, a claim for aiding and abetting a tort has three elements: (1) a primary tort-feasor committed a tort against plaintiff; (2) the defendant knew that the primary tort-feasor's conduct was a breach of duty; and (3) the defendant substantially assisted or encouraged the primary tort-feasor in committing the tort. Witzman v. Lehrman, Lehrman & Flom, 601 N.W.2d 179, 187 (Minn. 1999). The amended complaint pleads that Klane breached his fiduciary duties to Senior Cottages in stripping the company of its assets without reasonable compensation; that Morris and Morris, Carlson knew that Klane's actions were in breach of his fiduciary duties; and that Morris and Morris, Carlson provided substantial assistance to Klane and advised its client, Senior Cottages, to conclude the transaction. These allegations are sufficient to plead a claim for aiding and abetting a breach of fiduciary duty.

We reverse the district court's decision holding the trustee lacked standing to assert claims against Morris and Morris, Carlson for malpractice and aiding and abetting the breach of fiduciary duty. The bankruptcy court must exercise its discretion to decide whether to allow the trustee to amend his complaint–without relying on the standing argument we have rejected. We remand for further proceedings in accordance with this opinion.

COLLOTON, Circuit Judge, with whom LOKEN, Chief Judge, joins, concurring.

While I appreciate the frustration of the bankruptcy court at the trustee's approach to this litigation, and the district court's skepticism of an amended complaint that includes no allegation that Senior Cottages would have remained solvent absent the transfer of assets caused by Murray Klane, I conclude that the rules applicable to trustee standing, motions to amend, and motions to dismiss do require that we reverse the judgment of the district court. I therefore concur in Judge Gibson's opinion for the court, with two additional observations.

-16-

First, one statement in our opinion – "to recover damages, the trustee will eventually have to prove the amount by which the fair market value of the assets and the cash transferred to Millenium exceeded the value of the debt Millenium assumed," *ante*, at 12 – presupposes that there was indeed a market for the assets in which Senior Cottages could have sold them before the corporation filed for bankruptcy. The amended complaint alleges that the low-income housing tax credits were valuable assets that were transferable by Senior Cottages, presumably to investors who would provide equity for the low-income housing projects to be undertaken by Senior Cottages. *See* Jeanne L. Peterson, *The Low-Income Housing Tax Credit*, 73 Mich. B.J. 1154, 1157 (1994); National Association of Housing and Redevelopment Officials, Resources for Affordable Housing, Low-Income Housing Tax Credits (2000), http://www.nahro.org/home/ resource/credit.html (last visited Mar. 22, 2007). Although there is no allegation in the complaint that Senior Cottages would have remained solvent absent the transfer of assets by Klane, it is at least theoretically possible that the assets could have been transferred by Senior Cottages for valuable consideration before it filed for bankruptcy. This is why the trustee has standing to bring this action. But to move the matter beyond theory, the trustee will have to prove that there was indeed a market for these tax credits and other assets, such that the corporation was actually damaged by Klane's actions. If the assets were not transferable for substantial value as a practical matter, and if the tax credits were worthless to Senior Cottages itself because the corporation was insolvent and destined for bankruptcy, then the trustee will have suffered little or no damage as a result of the asset-stripping.

Second, although the district court dismissed this action based on the trustee's perceived lack of standing, the bankruptcy court based its order of dismissal on the doctrine of *in pari delicto*. In this court, the appellees disclaimed reliance on the *in pari delicto* doctrine as a ground for affirming the judgment of the district court. Because the defense was not briefed or argued, I concur with Judge Gibson that we should not consider the matter *sua sponte*. On remand, however, the district court

should remain free in the first instance to entertain argument from Morris concerning the merits of the bankruptcy court's ruling, or Morris may wish to consider developing the defense further on remand from the district court to the bankruptcy court. We have held that the equitable defense of *in pari delicto* is available in an action by a bankruptcy trustee if the defense could have been raised against the debtor, and it may be successful where the alleged wrongdoing was undertaken by an agent of the debtor who was the "sole actor" for the debtor during the period of the wrongdoing. *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837-41 (8th Cir. 2005). The amended complaint alleges that "Klane, at all relevant points in time, was in complete control of the daily operations of both SCA and SCM," (App. at A71), but the parties have not addressed on appeal how this allegation relates to the defense of *in pari delicto*. Consequently, we have not heard from Morris or the trustee about whether the roles of other actors in the corporation would defeat application of the "sole actor" doctrine, or whether the defense otherwise faces insurmountable "difficulties on the pleaded facts of this case." *Ante*, at 13.

    With these observations, I join the opinion of the court.

_____